MURDOCK, Justice
(dissenting).
As a threshold matter, I note that the underlying issue for which the discovery is sought in this case is not the direct question whether there was an unconstitutional disparity in the makeup of the jury panels in Tuscaloosa County at the time Albert Mack III was indicted and convicted in 1995. Rather it is whether there was a constitutional disparity and whether this disparity was such that it was known or should have been known to Mack’s trial counsel so that his failure to assert it and to conduct the discovery now being attempted in an effort to find proof of it justifies a conclusion that counsel was not acting as the counsel guaranteed by the Sixth Amendment to the United States Constitution. If the answer to any aspect of the latter query is “no,” this would have been a ground for the Court of Criminal Appeals to have reached a different result in Mack I. I see no discussion of this issue in Mack I; I therefore assume that the State did not explore it at the time of that decision, and I will not do so now.
Nonetheless, under the de novo standard by which we are to review the current petition, I question whether the discovery being ordered by this Court today will provide Mack the information he is seeking concerning the race and gender of veniremembers from 1978 to 1995. In this regard, I first note that, according to the affidavit of Kathie Viselli, the director of the Board of Registrars for Tuscaloosa County, the only voter-registration records from 1978-1995 that have been located are from the years 1980 to 1984. Even if these records were to show a significant disparity in the makeup of Tuscaloosa County jury panels during those years, I question how material this information would be to Mack’s ultimate purpose of showing that his 1995 conviction came at the hands of an improperly constituted jury to which his trial counsel should have objected.
Second, I am not persuaded that the available registration forms, even for this four- or five-year period, contain the information needed. Alabama law during this period did not provide for registration forms requesting that the voter indicate his or her race or gender. See 65 So.3d at 902 n. 3 (Bolin, J., concurring specially and indicating the differences between the current registration statute and the statute in place before the 2003 amendment). In her affidavit, Viselli states that she has worked with the Tuscaloosa Board of Registrars only since 2004. She thereafter states:
“I do not know for sure whether demographic information, such as race and gender, will be contained on the voter registration applications from the years 1980-1984. The voter registration applications request data on race and gender. However, in my experience, in some cases applicants will fail to identify their race or gender or both on the voter registration applications.”
Especially in light of the status of Alabama law during the period 1980 through 1984,1 question whether Viselli’s description in the middle sentence of what is requested on voter-registration applications should be read in relation to the reference in the preceding sentence to the “registration applications from the years 1980-1984” or in relation to the years with which Viselli has “experience,” as referenced in her following sentence, i.e., from 2004 forward.
For similar reasons, and despite some suggestion to the contrary in one of the numerous exhibits attached to the State’s petition,[4]1 am not persuaded that the vot *905 er-registration applications Mack seeks do not contain the entire Social Security number of the applicants. The Alabama statute governing this matter during the period in question provided for registration forms requiring the voter to provide his or her entire Social Security number. Again, see 65 So.Sd at 902 n. 3 (Bolin, J., concurring specially and indicating the differences between the current registration statute and the statute in place before the 2003 amendment).
Overarching these doubts is the fact that the voters whose Social Security numbers appear in whole or in part on the voter-registration forms to be produced are not parties to this case. I therefore do not consider myself or other elements of the judiciary bound by the fact that the prose-cutorial arm of the State, insofar as it is a party to this action, does not adequately make an issue of this fact. In his special writing, Justice Bolin correctly observes that “[cjitizens applying to vote before the effective date of Act No. 2003-313 had a right to rely on their belief that their State government would not make available their Social Security number, which were requested by the board of registrars on their voter-registration application.” 65 So.3d at 903 (Bolin, J., concurring specially). The judiciary is a part of that State government.
On the basis of the law and materials presented, and the confidentiality concerns expressed above, I do not believe the relief left in place by this Court’s decision today is justified. I therefore respectfully dissent.
SMITH, J., concurs.

. The materials before us include an exhibit consisting of a letter from Mack's counsel to the trial judge recounting an April 2010 conversation with Coral Lewis "in the Tuscaloosa *905 County Voter Registration records department.” Counsel (not purporting to quote Lewis) asserts that "Lewis indicated that the voter registration applications request name, address, date of birth, race, sex, drivers' license numbers, and the last four digits of the applicant’s [Sjocial [SJecurity number.” (Petition Exhibit D, App. 8 at p. 2.)